UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEDICAL IMAGING SOLUTIONS GROUP, INC. | ) |
| | ) |
| v. | ) C.A. No.: 05-10080 DPW |
| | ) |
| ALKOMED TECHNOLOGIES, LLC. and | ) |
| ALEXANDER KOUSPAKIAN | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

I. INTRODUCTION

Defendants Alkomed Technologies, LLC. ("Alkomed") and Alexander Kouspakian ("Kouspakian") have each filed motions to dismiss Plaintiff's Amended Complaint. Alkomend and Kouspakian allege that the Plaintiff's Amended Complaint fails to claim damages sufficient to meet the jurisdictional requirement of $75,000.00 in order to establish diversity jurisdiction. Alkomed, in a separate motion alleges that the Plaintiff's Amended Complaint fails to state a claim for which relief may be granted. As will be set forth more fully below, the Plaintiff's Complaint sufficiently claims facts which both satisfy pleading requirements to establish the amount in controversy, and set forth a cause of action sufficient to defeat Defendants' motion to dismiss. For the following reasons, Defendants' motions to dismiss must be denied.

II. THE AMOUNT IN CONTROVERSY

A. Factual Background

The Defendants challenge whether the Plaintiff's complaint properly meets the amount of controversy requirement of 28 U.S.C. § 1332(a). In fact, Defendants specifically state that the Plaintiff "only alleges that $10,000.00 is owed to them." The Defendants continue to allege that, beyond the $10,000.00 deposit, "[t]he Plaintiff never alleges that it has suffered any further

damage." A *careful* reading of the Amended Complaint clearly indicates otherwise.

Paragraph six of the Amended Complaint sets forth that "this Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of jurisdiction between the parties <u>and the amount in controversy exceeds the sum of $75,000.00.</u>"(emphasis added) Paragraph fourteen states that MIS paid a $10,000.00 deposit to the Defendants to acquire certain medical imaging equipment. However, it is the next paragraph that begins to establish damages sustained well beyond the initial $10,000.00 deposit.

In paragraph fifteen, it is alleged that after entering the contracts, MIS was approached by one of its largest customers to supply, install and perform maintenance on certain imaging equipment. The contracts entered into between MIS and Defendants would have enabled MIS to perform for this customer. Based upon these contracts and the assurances of Defendants (see paragraphs 16 and 17 of the Amended Complaint) MIS contracted with this customer to perform the requested services. Paragraph eighteen establishes that damages well beyond the initial deposit were suffered. In that paragraph it is alleged that despite Defendants' assurances, the contracted tools were never delivered, and therefore MIS was unable to fulfill its contractual commitments resulting in the loss of its client and significant contractual revenue.

B. Legal Standard

It is well settled that to defeat a motion to dismiss for failure to state a claim for the amount of controversy required for diversity jurisdiction, "all the plaintiff must do to carry his burden is to set forth facts which, if true, would prevent the trier from concluding to a legal certainty that the potential recovery is capped at a figure below the jurisdictional minimum." Payne v. Goodyear Tire & Rubber Co., 229 F.Supp.2d 43, 46 (D.Mass 2002). Ordinarily, a

plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court. Spielman v. Genzyme Corp. 251 F.3d 1,5 (1st Cir. 2001). Once questioned however, a plaintiff is merely required to show that facts exist that would prevent the trier from concluding *to a legal certainty* that damages fall short of the jurisdictional minimum. Payne 229 F.Supp.2d at 46 (emphasis added).

The Defendants rightly point out that in considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume that all material allegations set forth in the complaint are true. Williams v. City of Boston, 784 F.2d 430, 433 (1st Cir. 1986). A plain reading of the Amended Complaint illustrates that MIS claims that the Defendants breached a contract to provide certain tools to MIS. The Amended Complaint alleges that as a result of said breach, MIS suffered **both** a loss of a $10,000.00 deposit and breach of a contract resulting in the loss of a valued customer and loss of "significant revenue" as a direct and proximate result of Defendants' breach. Accepting all of Plaintiff's fact as true, it cannot be concluded **to a legal certainty** that Plaintiff cannot meet the jurisdictional minimum. On the contrary, Plaintiff alleges in its Amended Complaint that the jurisdictional minimum can be met. This is not a mere conclusion, paragraphs 15-18 allege facts to support this claim.

Where it cannot be determined to a legal certainty that Plaintiff cannot meet the jurisdictional minimum, the Defendants' motion to dismiss must fail.

### ALKOMED'S 12(b)(6) MOTION

A. Factual Background

Defendant Alkomed alleges that, as to it, the Plaintiff fails to state a claim upon which relief may be granted. As the basis for its motion, Defendant states, "[t]he Plaintiff alleges that

3

the last contract entered into between the 'parties' was on or about April 28, 2003. Alkomed Technologies, LLC was not organized with the Secretary of State of the Commonwealth of Massachusetts until October 21, 2003." While these statements are factually true, they fail to provide a complete picture of the facts as they existed at the time of contracting, or as alleged in the Amended Complaint.

As set forth in the Amended Complaint, Alexander Kouspakian began discussions to build a relationship between the two companies, (MIS and Alkomed). Paragraph 11 continues to state that "Kouspakian indicated that <u>Alkomed</u> could provide this equipment to MIS . . ." (emphasis added). The Amended Complaint alleges that MIS and Kouspakian and/or Alkomed entered into a series of contracts. (A copy of said contracts are attached as Exhibit "A") Each of the contracts list Alkomed as the selling party. Each of the contracts references the deposit being delivered and received. To date, Alkomed, the contracting party remains in possession of the deposit from MIS.

Under Massachusetts law, a corporation would be bound by the terms of a contract executed by its founder for its benefit even though the corporation had no legal existence at the time the contract was executed, where after legal incorporation the corporation accepted the benefits of the contract with knowledge of its terms. <u>Framingham Sav. Bank v. Szabo</u>, 617 F.2d 897, 900 (C.A. Mass 1980) (citing M.G.L.A. c. 106, §9-204). Assumption of a contract by a successor corporation does not necessarily need to be express. Facts and circumstances may show implicit acceptance of a contract by a successor corporation. <u>Aldrich v. ADD Inc.</u>, 770 N.E.2d 447, 452 (Mass 2002). Certainly Alkomed had knowledge of the terms of the contracts between the parties since Alexander Kouspakian negotiated the terms for Alkomed, and remains

a manager of Alkomed and shares an address with Alkomed. Certainly Alkomed has retained the benefits of the contract since it remains in possession of the only value transferred between the parties, the $10,000.00 deposit. Kouspakian, as alleged in the Amended Complaint, held Alkomed out as an existing and contracting party prior to it's actual legal existence. However, after its October 2004 organization, the parties continued to attempt to resolve this dispute prior to the January 2005 filing of this action. Defendants' actions prior to Alkomed's organization and after the organization illustrate its intent to be bound by the contract between the parties.

B. Legal Standard

A complaint will survive a motion to dismiss for failure to state a claim as long as it pleads sufficient facts to warrant recovery on any cognizable theory of a case. Tompkins v. United Healthcare of New England Inc., 203 F.3d 90, 93 (C.A.1 Mass. 2000) Facts within a complaint may be express or implied, when construed to thwart a motion to dismiss. U.S. v. Swiss American Bank, Ltd., 116 F.Supp.2d 217, 219-220 (D.Mass. 2000). A motion to dismiss for failure to state a claim is only appropriate if, accepting all allegations of the complaint as true, and giving the plaintiff the benefit of all reasonable inferences, the complaint sets forth no set of facts which can justify recovery. Cooperman v. Individual Inc., 171 F.3d 43, 46 (C.A.1 Mass 1999).

The Amended Complaint states that the Defendant Alkomed entered into a contract. It is alleged that Kouspakian held Alkomed out as the contracting party. The contracts list Alkomed as the contracting party. Alkomed received value in the form of the deposit from the Plaintiff. The Amended Complaint alleges that the Defendants breached the contracts. It can be inferred from the allegations that Alkomed, beyond its organization, accepted the contract and assumed

its liabilities by virtue of its retention of the deposit and the continued actions of Kouspakian in the name of Alkomed. The Amended Complaint certainly alleges facts sufficient to maintain a cause of action. Reasonable inferences may also be drawn to support Plaintiff's claims. Defendant's motion to dismiss for failure to state a claim must therefore fail.

## CONCLUSION

For the aforementioned reasons, both Defendants' motion to dismiss for lack of subject matter jurisdiction, and Defendant Alkomed's motion to dismiss for failure to state a claim for which relief may be granted must be denied.

Respectfully submitted,
MEDICAL IMAGING SOLUTIONS GROUP, INC.
By its attorneys
BLISH & CAVANAGH

Thomas E. Romano, BBO# 631985
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900 (phone)
(401) 490-7640 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2005, a true copy of the within Memorandum was forwarded by United States mail, postage prepaid, as follows:

Ara H. Margosian II, Esq.
415 Mt. Auburn Street
Watertown, MA 02472

Exhibit A

①

# alko

**CONTRACT**
No.:03-042502

Date: March 5, 2003

The Buyer: Mr. Bobby Hogan, MIS
Tel: 210-599-4400 Fax: 866-728-1178

The Seller: Alkomed Technologies
268 Commonwealth Ave., Ste. #102, Boston MA. 02115. Tel: 617-266-1664;Fax: 617-266-9560

This Contract is made by and between the Buyer and Seller, whereby the Buyer agrees to buy and the Seller agrees to sell the under-mentioned commodity according to the terms and conditions stipulated below.

Item Description Qty. Unit Price Total Price
1. 1997 Siemens Somatom Plus 4 CT Scanner (Details previously sent via e-mail). The System is currently available, and is subject for prior sale. *System to be de-installed under MIS supervision,*
Price: US$95,000 FOB Europe *$85,000 US crated and ready for shipment FOB England.*
Deinstall from Current Location. ☑

2. Terms of Payment: *Done*
Upon signing and returning this agreement, via fax, the buyer agrees to send US$10,000 deposit immediately to secure above system. The deposit is no longer refundable after buyer accepts the unit upon a sight inspection, if requested. If buyer accepts equipment without conducting a physical inspection, seller is released from all the liabilities. US$85,000 will be paid to seller two (2) days after a satisfactory inspection. *$75,000*
Wire transfer information: Account No. 0038587748,Fleet Bank, Boston. Routing ☑
Number:011000390, Swift: FNBU533

4. Warranty:
No Warranty implied system sold "as is where is" condition.

5. Liability:
Seller shall not be held liable for and shall be held harmless by the buyer for any damages, consequential, direct or indirectly arising out of, in connection with, or resulting from the goods including but not limited to, shipping, manufacture, repair, handling, installation, possession, operation and any and all claim, actions, suits and proceedings which may be instituted in respect to the foregoing.

6. Cancellation:
This contract is subject to withdraw or change upon notice at any time prior to seller receiving deposit from buyer.

8. Legal:
This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This agreement shall be governed by and construed in accordance with the laws of the commonwealth of Massachusetts.

The Buyer:                              The Seller:

Name: _____                     Name: Alkomed Technologies
Signature: Robert H. Hogan              Signature: _____
3/25/03

Amendment 1: price as agreed upon to be US$ 85,000.

Amendment 2: No Circumvention clause as agreed ORALLY. In Respect to all businesses conducted with Alkomed contacts in Europe. Alex Kouspakian  I.K.

(2)

**akomed** TO: BOBBY HAGAN

**CONTRACT**
No. 00-042003

Date: April-24-2003

The Buyer: MIS-Mr. Bobby Hagan
Tel: 210-858-0233 Fax: MIS office

The Seller/Renter: Akomed Technologies
264 Commonwealth Ave., Ste. #102, Boston MA. 02116. Tel: 617-266-7748;Fax: 617-266-9880

This Contract is made by and between the Buyer and Seller; whereby the Buyer agrees to buy and the Seller agrees to sell the under-mentioned commodity according to the terms and conditions stipulated below

Item Description:
1. Sale of Siemens Harmony MRI Shimming Tool. Rental of Siemens Harmony Ramp Power Supply, Probe and Cables.

Price: US$68,000 for Shimming Tool and $5000 per weekly rental for Siemens Harmony ramp power supply and probe including all necessary cables, delivered Houston, Texas, US. Seller/Renter responsible for all packing, transportation, shipping, taxes, import/export fees

2. Terms of Payment:
Upon signing and returning this agreement, via fax, the buyer agrees to send US$10,000 deposit immediately to secure above system, which has already been forwarded. Balance upon confirmation of shipping and delivery and execution of this Contract.
Wire transfer information: Account No. 0036587748,Fleet Bank, Boston. Routing Number:011000390, Swift: FNBU833
4. Warranty: Seller/Renter warranties the ramp power supply and probe and cables to be in working order. Seller warranties that shimming tool will arrive US in good working order.
5. Liability: Buyer shall not be held liable for and shall be held harmless by the buyer for any damages, consequential, direct or indirectly arising out of, in connection with, or resulting from the goods including but not limited to, shipping, manufacture, repair, handling, installation, possession, operation and any and all claims, actions, suits and proceedings which may be instituted in respect to the foregoing.
6. Cancellation: This contract is subject to withdraw or change upon notice at any time prior to seller receiving deposit from buyer.
6. Legal: This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This agreement shall be governed by and construed in accordance with the laws of the commonwealth of Massachusetts.
7. It is understood that the ramp power supply, probe and cables and shimming tool will be transported with a representative or agent of Akomed who will be with the equipment at all times while in US. It is also understood that MIS will compensate this representative $1000 per day for expenses.
8. It is understood that each party of this Contract will not circumvent the other party in this transaction. Doing so will result in the offending party compensating the injured party an amount equal to 20% of this transaction.

The Buyer:                                    The Seller:
Name: MIS Medical Imaging Solutions Group, Inc.   Name: Akomed Technologies
Signature:                                    Signature:

July 11, 2003

NOTE: Rental of Power Ramp & Probe needs to be Returned by July 20, 2003.